# UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| INFINITY GENERAL CONSTRUCTION SERVICES, INC., a Florida Corporation, )<br><br>Plaintiff, )<br>v. )<br><br>CRYSTAL HOSPITALITY, LLC, a Foreign Corporation; & ARGONAUT INSURANCE COMPANY, a Foreign Corporation, )<br><br>Defendants, ) | Civil Action No.: 6:23-cv-01071 |

## DEFENDANT, CRYSTAL HOSPITALITY, LLC'S, ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Defendant, CRYSTAL HOSPITALITY, LLC ("Crystal"), by and through the undersigned counsel, and pursuant to Fed. R. Civ. P. 12, files its Answers and Affirmative Defenses to Plaintiff, INFINITY GENERAL CONSTRICTION SERVICES, INC.'s ("Plaintiff") Complaint [ECF 1], and states as follows:

### Parties, Jurisdiction and Venue

1.    Without sufficient knowledge to admit or deny and, therefore, denied.

2.    Admitted.

1

3.    Without sufficient knowledge to admit or deny and, therefore, denied.

4.    Does not appear to require a response.  To the extent a response is required, denied.

5.    Without sufficient knowledge to admit or deny and, therefore, denied.

6.    Does not appear to require a response.  To the extent a response is required, denied.

7.    Does not appear to require a response.  To the extent a response is required, denied.

8.    Denied.

## GENERAL ALLEGATIONS

9.    Admitted that this proceeding, as pled, appears such.  Denied to the extent such infers Crystal is liable to Plaintiff for any damages.

10.    Denied.  Crystal refers the Court, and the parties, to the Subcontract Agreement attached to the Complaint at Exhibit "A" as the best evidence of its contents and a description of the "Project."

11.    Denied.  Crystal refers the Court, and the parties, to the document referenced in Paragraph 11 of the Complaint as the best evidence of its contents.

12. Denied. Crystal refers the Court, and the parties, to the Subcontract Agreement attached to the Complaint at Exhibit "A" as the best evidence of its contents.

13. Denied. Crystal refers the Court, and the parties, to the Subcontract Agreement attached to the Complaint at Exhibit "A" as the best evidence of its contents.

14. Denied.

15. Denied. Crystal refers the Court, and the parties, to the document attached to the Complaint at Exhibit "B" as the best evidence of its contents.

16. Denied.

17. Denied.

18. Denied. Crystal refers the Court, and the parties, to the document attached to the Complaint at Exhibit "C" as the best evidence of its contents.

19. Denied.

20. Denied.

21. Denied.

22. Denied. Crystal refers the Court, and the parties, to the document attached to the Complaint at Exhibit "D" as the best evidence of its contents.

23. Denied. Crystal refers the Court, and the parties, to the document attached to the Complaint at Exhibit "E" as the best evidence of its contents.

24.     Denied.

## Count I – Breach of Contract
### (Against Crystal)

25.     Crystal realleges and incorporates its responses to Paragraphs one (1) though twenty-four (24) above as if fully set forth herein.

26.     Admitted.

27.     Denied.

28.     Denied.

29.     Denied

30.     Denied.

31.     Denied.

32.     Denied.

33.     Denied.

WHEREFORE, Defendant, CRYSTAL HOSPITALITY, LLC, respectfully requests the Court to: a) enter judgment for Defendant on the Complaint of Plaintiff, INFINITY GENERAL CONSTRUCTION SERVICES, INC.; b) award Defendant its reasonable attorneys' fees and costs as the prevailing party under the Subcontract Agreement; and c) grant Defendant any such other relief the Court deems necessary and proper.

4

## Count II – Breach of Performance Bond
### (Against Surety)

Count II is not directed towards Crystal. To the extent such allegations are implicitly made against Crystal, and a response is required, denied.

WHEREFORE, Defendant, CRYSTAL HOSPITALITY, LLC, respectfully requests the Court to: a) enter judgment for Defendant on the Complaint of Plaintiff, INFINITY GENERAL CONSTRUCTION SERVICES, INC.; b) award Defendant its reasonable attorneys' fees and costs as the prevailing party under the Subcontract Agreement; and c) grant Defendant any such other relief the Court deems necessary and proper

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Plaintiff breached the Subcontract Agreement thereby relieving Crystal of any obligations thereunder.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff ratified Crystal's performance of its obligations under the Subcontract Agreement.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff did not satisfy all conditions precedent prior to commencing this proceeding including, *inter alia*, not properly terminating Crystal.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff waived the right to assert that Crystal breached the Subcontract Agreement because, *inter alia*, Plaintiff breached the Subcontract Agreement.

## FIFTH AFFIRMATIVE DEFENSE

Any damages purportedly suffered by Plaintiff were not the result of Crystal's conduct but rather were the result of Plaintiff's, or another entity's, conduct.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff failed to mitigate its damages.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff breached the implied warranty of the adequacy of the subject plans and specifications (*Spearin* Doctrine), and Crystal reasonably relied upon the defects in the plans and specifications, and such defects caused the unacceptable project or adversely affected the cost, time, or difficulty in performing the work set forth in the Subcontract Agreement. The plans and specifications were not accurate and were not suitable for their intended use.

## EIGHTH AFFIRMATIVE DEFENSE

It was impossible for Crystal to perform under the Subcontract Agreement.

## NINTH AFFIRMATIVE DEFENSE

Any purported damages suffered by Plaintiff were the result of an intervening or superseding cause(s).

## TENTH AFFIRMATIVE DEFENSE

Some or all of Plaintiff's damages were *force majeure*.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff made material misrepresentations and/or omitted material facts to Crystal which precluded it from performing all or some of its obligations under the Subcontract Agreement.

## TWELFTH AFFIRMATIVE DEFENSE

The Subcontract Agreement was unconscionable with respect to Crystal's obligations thereunder.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff would be unjustly enriched if it were to recover damages from Crystal because any obligations under the Subcontract Agreement allegedly owed by Crystal to Plaintiff were performed by Crystal or other entities.

## FOURTEENTH AFFIRMATIVE DEFENSE

Crystal was ready, willing, and able to perform under the Subcontract Agreement, but Plaintiff prevented and/or frustrated such performance.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff is estopped from asserting that Crystal breached the Subcontract Agreement because, *inter alia*, Plaintiff breached the Subcontract Agreement.

## SIXTEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff suffered any damages, Crystal is entitled to a setoff resulting from Plaintiff's failure to pay Crystal that which it is required to under the Subcontract Agreement.

## RESERVATION OF RIGHTS

Crystal expressly reserves, and is not waiving, its right to amend its Answer and Affirmative Defenses.

WHEREFORE, having answered the Complaint, Crystal demands judgment against Plaintiff, that the Complaint be dismissed, with prejudice, and that Crystal be awarded its reasonable attorneys' fees and costs as the prevailing party under the Subcontract Agreement, and for such other and further relief as the Court deems appropriate.

DATED: July 19, 2023.

LUBLINER LAW PLLC

By:    */s/ Richard S. Lubliner*
Richard S. Lubliner, Esq.
FBN: 0047741
*Attorneys for Defendant,*
*Crystal Hospitality, LLC*

8

## COUNTERCLAIM

### Parties, Jurisdiction and Venue

1.      This is a civil action for damages with the amount in controversy exceeding $75,000, excluding interest, attorneys' fees, and costs.

2.      At all times material hereto, Counter-Plaintiff, CRYSTAL HOSPITALITY, LLC, (hereafter, "Crystal") was and is a foreign limited liability company, organized and domiciled in the state of Georgia.

3.      At all times material hereto, Counter-Defendant, INFINITY GENERAL CONSTRUCTION SERVICES, INC. (hereafter, "Infinity"), was and is a Florida corporation, with a  principal place of business in Ormond Beach, Florida.

4.      Venue is proper in the United States District Court for the Middle District of Florida, Orlando Division, because the causes of action accrued in Volusia County, Florida, and because the project at issue is located in Volusia County, Florida.

### General Allegations

5.      On or about December 29, 2020, 640 North Atlantic Hospitality, LLC (the "Owner"), entered into a construction contract with Infinity for the construction and renovation of the project commonly known as the Renaissance hotel located at 640 N. Atlantic Avenue, Daytona Beach, FL 32811 (the "Project").

9

Such contract between the Owner and Infinity is hereinafter referred to as the "Prime Contract."

6.    According to the Prime Contract, the guaranteed maximum price was $24,122,334, subject to any additions and deductions by change order, and included a substantial completion timeline for the Project of 457 calendar days from the commencement of work.

7.    On or about February 1, 2021, Crystal and Infinity executed a Subcontract Agreement between Contractor and Subcontractor (the "Subcontract Agreement") on the Project. (A copy of the Subcontract Agreement is attached to Infinity's Complaint and incorporated herein by reference; however, the copy of the Subcontract Agreement does not have the proper Exhibit "C" attached—the Project Schedule).

8.    From the beginning, it was apparent that Infinity was not prepared to properly commence work on the Project.  By way of example and not limitation, the required demolition of the existing structure had not started on time, all necessary materials were not on site, all necessary subcontractors, suppliers, vendors, etc., had not been secured, and the plans and specifications were inaccurate and incomplete.

9.    Infinity lacked sufficient experience and/or competency to manage a project of this magnitude and complexity, which ultimately resulted in  substantial

delays to the Project as a whole, and substantial damages to Crystal, in particular.

10.     From the onset, the original schedule was delayed as a result of Infinity's improper planning, mismanagement, conduct, omissions, and the lack of complete and buildable plans and specifications for the Project.

11.     In addition, as a cumulative result of the delays set forth above, and the effects of the COVID-19 pandemic, there were substantial price increases for various materials necessary to complete the Project.

12.     The plans and specifications for the Project were incomplete and had numerous defects and deficiencies.  Such defects and deficiencies necessitated numerous change orders and Requests for Information ("RFIs").

13.     The numerous change orders and RFIs were not processed in a timely and coherent manner (or processed at all) by Infinity, which further contributed to and exacerbated the delays to the Project.

14.     The defects and deficiencies in the plans and specifications were pervasive, causing problems with most, if not all aspects of the Project, and should have been corrected by Infinity, the Owner and/or the design professional on the Project.

15.     Further, Infinity failed and refused to timely and properly sequence and coordinate the work by other subcontractors and trades on the Project which resulted in additional delays to the Project.  Such delays were solely due to the acts

and omissions of Infinity.

16.    Accordingly, Crystal provided multiple written notices to Infinity identifying the various delays to the Project that were caused by the defective and deficient plans and specifications, and Infinity's lack of coordination and mismanagement of the Project, including, without limitation, outstanding work managed by Infinity that needed to be completed before Crystal could proceed, and identifying the extended periods of delays Infinity had caused to the Project.

17.    Again, by way of example and not limitation, one such written notice ("Notice of Delay") from Crystal to Infinity, setting forth in comprehensive detail the problems on the Project, was sent on or about February 23, 2023.  (A true and correct copy of the Notice of Delay is attached hereto as Exhibit "A")

18.    Instead of taking heed of the numerous problems and issues on the Project as set forth in the Notice of Delay, and working to remedy the problems, Infinity wrongfully sought to terminate Crystal by letter dated March 20, 2023. (A true and correct copy of Infinity's March 20, 2023, Termination Letter to Crystal is attached hereto as Exhibit "B")

19.    All conditions precedent to bringing this action have either been satisfied or waived.

20.    Crystal has retained the undersigned counsel and has agreed to pay a reasonable fee for services rendered.  Crystal intends to pursue prevailing party

recovery of all reasonable attorneys' fees, costs and disbursements, court costs and all expenses incurred in this action or proceeding pursuant to section 23.5 of the Subcontract Agreement.

## Count I – Breach of Contract

21.    Crystal realleges the allegations contained in paragraphs one (1) through twenty (20) above, as if fully set forth herein.

22.    The Subcontract Agreement constitutes a valid and enforceable agreement.

23.    Infinity materially breached and defaulted under the Subcontract Agreement in numerous ways, including without limitation, the following:

a. Improperly terminating Crystal from the Project despite Crystal performing the work in accordance with the terms of the Subcontract Agreement;

b. Improperly terminating Crystal without proper notice as required by the Subcontract Agreement;

c. Failing to provide plans and specifications for the Project which were free from defects and deficiencies;

d. Failing to provide accurate and adequate plans and specifications for the Project that were suitable for their intended use;

e. Failing to process and approve change orders and RFIs that were

necessary on the Project;

f.  Failing to timely process and approve change orders and RFIs that were necessary on the Project;

g.  Failing to pay for work that was completed pursuant to approved change orders;

h.  Failing to provide sufficient skilled workers, equipment, materials, and/or supervision on the Project;

i.  Failing to properly supervise other subcontractors and trades on the Project;

j.  Failing to properly sequence and coordinate the work of other subcontractors and trades on the Project;

k.  Failing to supervise and/or prosecute the work on the Project with promptness and diligence;

l.  Unreasonably withholding the grant of additional time on the Subcontract Agreement for Crystal to complete the Work;

m. Wrongfully supplementing Crystal's work on the Project;

n.  Wrongfully rejecting and refusing to pay (or reducing) outstanding and valid pay applications;

o.  Failing to mitigate damages on the Project to the detriment of Crystal;

p.  Failing to disclose material information pertinent to the Project;

14

q.  Failing to adequately plan and prepare the necessary scope of work to complete the Project; and

r.  Hindering Crystal's ability to fulfill its obligations under the Subcontract Agreement.

24.    Infinity also breached the covenant of good faith and fair dealing implicit in the Subcontract Agreement.

25.    As a direct and proximate result of Infinity's material breaches and defaults of the Subcontract Agreement, Crystal suffered significant damages and continues to suffer damages.

26.    Infinity's material breaches also rendered Crystal unable to pay subcontractors and suppliers on the Project, which has further damaged, and further continues to damage Crystal.

27.    Infinity's material breaches discharged Crystal's obligation to continue performing under the Subcontract Agreement.

WHEREFORE, CRYSTAL HOSPITALITY, LLC, prays that this Court enter a judgment against INFINITY GENERAL CONSTRUCTION SERVICES, INC., for: (1) damages; (2) attorneys' fees, costs and disbursements, court costs and all expenses incurred in this action pursuant to section 23.5 of the Subcontract Agreement; (3) interest; and (4) any such other and further relief that the Court deems just and proper.

## Count II – Quantum Meruit

28.     Crystal realleges the allegations contained in paragraphs one (1) through twenty (20) above, as if fully set forth herein.

29.     Crystal brings this claim for quantum meruit as an alternative remedy to Count I set forth above.

30.     Crystal provided construction services, labor, and related materials to Infinity in furtherance of the Project.

31.     Infinity acquiesced in Crystal's provision of construction services, labor, and related materials, and retained those services, labor, and materials.

32.     Infinity was aware that Crystal expected to be compensated for the value of those services, labor, and materials, yet failed to compensate Crystal, fully and adequately, for such value.

33.     Infinity has been unjustly enriched by Crystal's provision of construction services, labor, and related materials.

34.     It would be inequitable for Infinity to receive the benefit of such services, labor, and materials without properly paying for them.

35.     Crystal has no other adequate remedy at law.

WHEREFORE, CRYSTAL HOSPITALITY, LLC, alternatively prays that this Court enter a judgment against INFINITY GENERAL CONSTRUCTION SERVICES, INC., for: (1) restitution in the amount of the unjust enrichment

16

obtained by INFINITY GENERAL CONSTRUCTION SERVICES, INC.; (2) attorneys' fees, costs and disbursements, court costs and all expenses incurred in this action pursuant to section 23.5 of the Subcontract Agreement; (3) interest; and (4) any such other and further relief that the Court deems just and proper.

DATED: July 19, 2023.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically furnished through the Middle District of Florida's Case Management/Electronic Case Filing system on July 19, 2023, to: BRIAN P. KIRWIN and ANDREW J. PEKOE, Kirwin Norris, P.A., 15 West Church Street, Suite 301, Orlando, Florida 32801 at bpk@kirwinnorris.com and ajp@kirwinnorris.com; and ROBERT C. GRAHAM, JR., Paskert, Divers, Thompson, 100 North Tampa Street, Suite 3700, Tampa, Florida 33602 at rgraham@pdtlegal.com and mlewis@pdtlegal.com.

| | |
|---|---|
| /s/ *Thomas F. Neal* | LUBLINER LAW PLLC |
| THOMAS F. NEAL | |
| Florida Bar Number: 603368 | By: /s/ *Richard S. Lubliner* |
| Tneal@dsklawgroup.com | Richard S. Lubliner, Esq. |
| Lnovak@dsklawgroup.com | FBN: 0047741 |
| RYAN H. WISNESKI | 1645 Palm Beach Lakes Blvd., |
| Florida Bar Number: 119634 | Suite 1200 |
| Rwisneski@dsklawgroup.com | West Palm Beach, Florida 33401 |
| Ebarker@dsklawgroup.com | Phone: 561-207-2018 |
| de Beaubien, Simmons, Knight, | Fax: 561-207-2001 |

Mantzaris & Neal, LLP
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone: (407) 422-2454
Facsimile: (407) 849-1845
Attorneys for Counter-Plaintiff,
Crystal Hospitality, LLC

Email: rich@lubliner-law.com
Email: michael@lubliner-law.com
Email: carolina@lubliner-law.com
Attorneys for Defendant,
Crystal Hospitality, LLC

EXHIBIT "A"

# NOTICE OF DELAY
## Renaissance Daytona Beach, FL
### Attn: Infinity GCS

February 23, 2023
Submitted By: Crystal Hospitality





## NOTICE OF DELAY TO INFINITY

We are writing this notice of delay to Infinity GCS to express our concerns and bring to the attention of all parties the delays faced by Crystal Hospitality and their contractors/vendors on the Renaissance project due to the pre-existing conditions managed by the GC, Infinity GCS.

As a subcontractor, Crystal Hospitality has limited availability to redesign the original/contracted construction drawings and documents to accommodate the existing building conditions for both framing and plumbing scopes of work. Despite bringing our concerns to Infinity's attention, they continue to put full responsibility of redesign on Crystal Hospitality to make changes. These changes are the responsibility of the architectural, engineering and design team of record on this project. Infinity hired and managed the structural steel contractor, who completed the majority of the structural work not in accordance with the contract drawings Crystal Hospitality received during contract negotiations. For several months, we have been requesting Infinity to provide a full-time engineer on-site and/or revised red-line drawings to address these issues with the engineer/architect on record.

Please note that as-built drawings did not include an official survey of the existing structural layout, and therefore the structural components may not align with the plans or contract documents that were received and signed by Crystal. This misalignment has resulted in numerous challenges, including production delays and added expenses. To address these issues, RFIs are necessary to help resolve and answer the many questions that have arisen due to the unforeseen plan changes.

I would like to bring to your attention several pressing issues and concerns that have been impacting the progress of the project:

### FRAMING

1. Framing: The existing/newly constructed building conditions do not match the framing plans provided by Infinity GCs. Despite multiple requests for a meeting on site with the architect/engineer of record, Infinity's structural steel contractor, and GC to receive proper guidance on how to proceed with the framing scope, we have not been provided with a satisfactory plan or solution.

2. Framing: The construction drawings have been revised several times during the construction process, causing significant delays and expenses for Crystal Hospitality. Unfortunately, the subcontractor completed most of the work without prior approved change orders from us to avoid delays.



3. Framing: The North Side CMU wall and steel framing are incomplete, preventing Crystal from completing our scope of work, which includes framing and EFIS.

4. Framing: We provided a solution to the inadequate spacing issue on the 11th floor for the plumbing recirculating water line, but as of today (2.22.23), we have not received any solution from the architect of record. This delay has prevented us from completing both the plumbing and framing scope of work in this area.

5. Framing: The delays also continue in areas where the concrete foundation/slabs have not been poured or were recently poured. Unfortunately, Crystal cannot complete the framing scope in these areas and continue to experience delays.

### PLUMBING

6. Plumbing: The plumbing drawings provided by Infinity GCs did not match the actual site conditions, and as a result, Crystal has had to redesign the plumbing layout, causing significant delays and added expenses. Additionally, changes were made without prior change order approval, which has caused further delays and expenses.

7. Plumbing: Crystal has been requesting overlap drawings from all MEP subcontractors coordination meetings for several months to avoid conflicts on site between trades. However, no action has been taken, and as a result, significant delays and monetary expenses have been incurred. An MEP Engineer is needed on site to coordinate all trades with existing site conditions, and compensation is required for Infinity's delay in the process. Crystal will provide a list of change orders.

8. Plumbing: Infinity GCS changed PVC drain lines to cast iron after all plumbing drawings called for PVC drain lines, causing significant delays to the schedule and increased labor and material costs. Additionally, due to incomplete work on the roof, Crystal has not been able to complete the roof rain drain leaders. Furthermore, Infinity GCS has not provided a final location for the gas meter, delaying the gas line installation. No ETA has been provided for these tasks.

9. Plumbing: Crystal has not been able to complete the roof rain drain leaders due to incomplete work on the roof. An ETA for completion has not been provided.

10. Plumbing: The installation of the ice machine drain line has been temporarily delayed by Infiniti in light of the ongoing HVAC project, which has not yet been



completed. This decision was made to prevent any potential coordination conflicts over shared space.

11.  Plumbing: Infinity GCS has not provided a final kitchen layout or plans, including the soda line path of travel, causing delays to the plumbing scope of work. Despite waiting for several months, no plans, drawings, or field directives have been provided.

12. Plumbing: Several plumbing RFIs were sent to clarify plumbing-related issues, but many have not been answered, causing delays and added expenses. In addition, we asked many clarification questions on the project and never got answers.

13. Plumbing: Throughout the plumbing installation, no site elevation drawings were provided, which required additional man-hours to locate necessary city tap locations and determine the proper fall for all plumbing, including water, sanitary, and drainage lines. This created an additional financial burden, and a change order will be submitted for this additional scope of work.

**EIFS**

14. EIFS: Crystal was delayed by 12 months from beginning EIFS work due to Infinity GCS. This delay caused a significant impact on the project schedule and budget. Infinity GCS caused further delays to the EIFS work by not providing the owner-provided materials on time, which was necessary for the work to begin.

15. EIFS: Due to Infiniti's delay in constructing the masonry roof line on the roof, the completion of the EFIS project in that area has been impeded. This will result in additional expenses for labor, materials, and rental equipment to complete the project. We kindly request that Infinity expedite the construction of the masonry roof line in order to avoid further delays and costs.

16. EIFS: Infinity GCS did not complete the demolition of exterior walls properly, which caused additional work for Crystal to prepare the walls for EIFS installation. This led to significant delays and additional expenses for Crystal, without any compensation or change order provided by Infinity GCS.

17. EIFS: The EIFS drawings provided by Infinity GCS were incorrect, and Crystal had to spend extra time and effort on design with Infinity GCS to rectify the issues. This resulted in an agreed additional cost of $44,000.00 for labor and material, with a signed change order by Infinity Team. However, when Crystal submitted a payment application for 50% of the work completed, it was denied.



18. EIFS: Exterior construction is still incomplete, with Infinity GCS cutting openings that need to be finished before EIFS installation. Furthermore, there are missing exterior windows and old windows that still need to be removed, which is causing further delays and hindering the productivity and efficiency of the work on the exterior of the building.

## DRYWALL

19. Drywall: In order to proceed with any future drywall work, it is imperative that the building is 100% sealed and the roof is 100% completed. Any drywall work cannot be done until these conditions are met, as it poses a risk to the integrity of the work and the safety of the workers. We kindly request Infinity GCS to provide a written letter of release, absolving Crystal from any responsibility/liability before we can proceed with any drywall work. This is to ensure that all parties involved are protected and that the work can be done with the highest level of quality and safety standards.

20. Drywall: The building is not concealed to date, and we cannot take any responsibility/liability to do any drywall mold unless the building is 100% sealed, roof is 100% completed, or we need a letter from Infinity GCS to proceed with any future drywall work releasing us from any responsibilities.

## FINISHES / TILE

21. Finishes/Tile: The balcony tile installation project has been significantly delayed due to missing balcony railings, which were not delivered to the site and installed by Infinity GCS as per the original schedule. Crystal Hospitality is incurring substantial financial expenses as a result of this delay, and it is also disrupting the overall project schedule. In order to catch up lost time and minimize further delays, Crystal will need to add more installers to the project, for which we will be sending a change order to Infinity GCS for compensation due to their delay. However, it should be noted that the installation of the balcony tile cannot proceed until the balcony railings have been installed, and we request that Infinity GCS provide a clear timeline for this work to be completed.

22. Finishes/Tile: We have recently begun the tile installation process, and unfortunately, we have discovered that the tiles provided by the owner are of very poor quality. The tiles are irregularly shaped, with no straight edges, and are also of a large size, causing significant delays in the installation process. As a result, we kindly request that Crystal provide us with more time and financial support to install the tiles properly and ensure the project meets the desired quality standards.



## HVAC

23. HVAC: Unfortunately, we have discovered that the previous HVAC work completed by the Infinity contractor on the 3rd, 4th, and 5th floors has been removed and destroyed. This has caused a significant setback for the project and will require additional work and expenses to redo the work that was previously completed. We are requesting that a change order be approved prior to starting the repair work to cover the additional costs and delays caused by Infinity's actions.

24. HVAC: We have been made aware that the HVAC contractor is experiencing similar issues as Crystal with regards to missing engineering information, and as a result, they have been unable to complete work in some areas of the project. Unfortunately, this has caused delays in our framing and drywall work, particularly in the stack rooms on floors 8, 14, and 16. We kindly request that the HVAC contractor works expeditiously to resolve these issues and allow for the continuation of our work in the affected areas.

## DOOR AND FRAMES

25. The door frames provided by Infinity for installation were found to be rusted and damaged due to inadequate storage. Despite this, Crystal confirmed with Infinity that the frames were still needed and agreed on a change order pricing to sand and prime them with DTM. It should be noted, however, that Crystal cannot be held responsible for the condition of the frames. If additional work is required to recondition them, we request that a change order be approved before any further work is performed.

26. On October 12, 2021, Crystal notified Infinity that the door frames had been delivered out of sequence and requested that they be stored properly. Crystal also informed Infinity that we would not be responsible for any damaged or lost door frames, as they would need to be moved several times due to their early arrival.

## NATURAL DISASTER

27. In the aftermath of the recent hurricane, the building has experienced water intrusion, leading to the emergence of light mold issues on some of the shaft walls. Infinity had previously approved to treat and clean the affected areas. However, it is important to note that Crystal Hospitality bears no responsibility for the mold or any guarantees related to the performed work. A change order will be issued for the provided services.

## ELECTRICAL



28. Please note that the electrical components/gear needed to circulate air has not been installed due to damage from past weather events; we have been given the approval by Infinity to start drywall installation on the 3rd floor. Please note, that without proper air circulation throughout the building, the probability of mold growth will increase significantly. Please note, that Crystal will not be responsible for any mold or mildew growth or any remediation of mold if found in the future.

### Rentals and Materials

29. Crystal is experiencing increased costs for rental equipment due to delays caused by Infinity, and these costs will need to be reimbursed as a CO (Change Order). In addition, it is important that all GC/Owner-provided materials are delivered to the job site according to Crystal's specifications, including the correct amount and within the specified timeframe.

30. Please be advised that core drilling is not within the scope of our work and should be paid for separately, as is the practice with other contractors working on the site. We had previously issued a change order for this work, which was unfairly rejected. We will now thoroughly review all work completed and reissue the change order for payment. This will help ensure that the construction project can be completed on time and within budget.

### GENERAL NOTICE

31. Several pay applications have been rejected and reduced without proper explanation, while some payments have been delayed and not paid on time with unreasonable justifications. Despite this, Crystal continues to seek payment for items that are outside of their contracted scope of work, but have been completed. We have submitted change orders for previously requested work, which have been unfairly denied. We request that these payment issues are addressed in a timely and transparent manner, and that Crystal is compensated for the additional work completed as per the agreed terms of the contract.

32. Please be advised that any changes made to the plans after the contracted date will be subject to review and will require a change order (CO) for each item. This includes changes provided in shop drawings, as we understand that these may involve unforeseen and undisclosed items.

33. Buck Hoist: We would like to raise an additional issue regarding the use of the buck hoist. As everyone is aware, Crystal has been responsible for a larger scope of work on this project than any other contractor and has been providing more workers and material on site, especially in this high-rise building. However, we have been treated unfairly with regards to the use of the buck hoist to transport workers and materials to upper floors. During daily meetings, it has been proven that Crystal has been



given time off for only about four hours each day, which includes all other trades, to use the buck hoist. Technically, this gives Crystal no more than two hours a day to use the hoist, causing significant delays and additional financial costs for the company. We kindly request that this issue be addressed promptly and that Crystal is given proper access to the buck hoist to ensure timely completion of our work."

34. Each trip on the buck hoist takes approximately 10-15 minutes, including the time taken to load and unload materials and workers. With the limited time given for the use of the hoist, we are only able to complete a few trips per day. This significantly hinders our ability to transport necessary materials and workers to upper floors efficiently, causing delays in our work and additional costs to the company. We kindly request that the allotted time for the use of the buck hoist be reviewed and increased to ensure that our work can be completed effectively and efficiently.


Up until now, Crystal has made every effort to collaborate with Infinity and the on-site owners to minimize the need for notice to the bond company. However, moving forward, we will be reporting ALL delays caused by Infinity GCS to ensure that all parties are aware of the situation on site and understand the reasons for any delays. Crystal Hospitality is a for-profit organization and cannot provide services for free or against the terms of the contract under pressure.



Sincerely,

*Andrey Gerega*

Andrey Gerega

President/CEO



## Pictures References

**Item #3**



**Item #4**



**Item #5**





**Item #7**



**Item #8**



**Item #9**





**Item #10**

 

**Item #11**

 

**Item #15**





**Item #16**



**Item #18**

 





**Item #21**



**Item #22**

  



**Item #24**



**Item #27**



# EXHIBIT "B"



Date:  March 20, 2023

Crystal Hospitality
706 Executive Court
Woodstock, GA 30189

## Re:  Daytona Renaissance Termination of Contract 640 N. Atlantic Ave Daytona Beach, FL 32118

Mr. Gerega,

Please accept this letter as Infinity GCS's ("Infinity") formal notice of default and termination of the Subcontract Agreement (the "Agreement") dated February 1, 2021.

Pursuant to subsection 14.1 of the Agreement, Crystal Hospitality ("Crystal") has committed the following acts of default and given cause for termination of the Agreement:

"Failure to supply sufficient skilled workers, equipment, or materials of proper quality and quantity"

"Failure to prosecute the Work with promptness and diligence"

"Failure in the performance of any of the provision of the Contract Documents"

As Crystal is aware, Infinity has afforded every opportunity for Crystal to bring the project back on to the critical path.  On July 8, 2022, Crystal and Infinity executed Change Order Number 10, providing Crystal with an additional $700,000.00 to address manpower and work quality concerns that Crystal attributed to their initial delays in completing the Work.  On October 11, 2022, Infinity notified your surety, Argonaut Insurance Company, of your continued failure to comply with terms of the Contract Documents.  A meeting was held on November 4, 2022 where Crystal was given the chance to show their work and prove their compliance with the Contract.  Since then, the project continues falter as Crystal commits the same actions that forced Infinity to bring a claim before the surety.  Crystal continues to fail to produce work of sufficient quality and has failed to furnish sufficient skill workers under the terms of the contract.  As a result of this meeting, Crystal, Infinity and the Owners reached an agreement to supplement Crystal's plumbing work, relieving Crystal of the responsibility to purchase materials for the project and allowing Crystal to focus on providing the manpower to complete the project.  Instead of bring the project closer to the critical path, Crystal has failed to  provide the sufficient manpower and has experienced another change in supervisors and crews at the project.  This revolving door has caused the project to fall further behind.  According to the most recent March 8, 2023 update from Palmetto Scheduling, the critical path is currently over 220 days behind based on the July 7, 2022 revised baseline schedule.

Crystal has received monthly updates from the third-party scheduler, attended daily meetings and is aware of the deepening delays on the project.

Due to the delay, Infinity continues to accrue liquidated damages, extended general conditions, attorney's fees and other damages associated with the delays caused by Crystal. Infinity will seek compensation for those damages from your surety and intends to assert all of its rights under the Agreement and performance bond.

Pursuant to subection 14.1 of the Agreement, Crystal is in default of the terms of this contract. The contract is accordingly terminated. This notice and the termination of the Agreement shall become effective 48-hours from the date of this Agreement. Infinity expects Crystal to remove all of its employees, contractors and equipment from the worksite by the expiration of the 48-hour period and cease all of its work. Crystal is prohibited from removing any materials or equipment that belong to Infinity, the Owners or any other subcontractors on the worksite.

Pursuant to section 3.2 of the Performance Bond, this letter shall also serve as Notice to your surety of termination of the Agreement.

Sincerely,

Nick Patel
Infinity GCS
730 S Atlantic Ave, Ste 204
Ormond Beach, FL 32176


Cc:    Stephanie H. Shear
       Barry Page
       Ryan Dry
       Natalia Avery
       Ishwar Naran
       Samir Naran
       Bill Bullen
       Nitesh Patel